■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID JANSSON, Appellant. [760 NYS2d 259] —Carpinello, J. Appeal from a judgment of the County Court of Washington County (Hemmett, Jr., J.), rendered May 29, 2002, convicting defendant upon his plea of guilty of the crimes of sodomy in the first degree and course of sexual conduct against a child in the first degree.

In satisfaction of a 33-count indictment charging him with various sex-related offenses, defendant pleaded guilty to sodomy in the first degree, based on allegations that he had engaged in deviate sexual intercourse with a preschool-aged girl,[1] and course of sexual conduct against a child in the first degree, based on allegations that he had engaged in numerous

---

1. There is nothing in the record to confirm the precise age of this particular victim, although it is undisputed that she was either four or five years

While now conceding the absence of a qualifying serious injury based on permanency, plaintiffs point out that their medical reports contain diagnoses of lumbar back strain with radiation and pain into the tensor fascia lata as to plaintiff Jennifer L. McElroy, as well as cervical strain with probable

facet trauma and myofascial pain syndrome as to plaintiff Catherine R. McElroy. As objective evidence of their conditions, they cite ultrasound examinations revealing "moderate to severe" muscle effusions as to both plaintiffs. As to Catherine McElroy, the ultrasound examination also showed "moderate to severe" myofasciitis, "moderate to severe" capsulitis and a possible herniated disc. An MRI of her cervical spine also showed some posterior impingement. As to Jennifer McElroy, the reports also indicate significant tightness in her left semi tendinosis and tensor fascia lata accompanied by less than full extension of her left knee. In addition to being restricted by her treating physician from contact sports for approximately three months, Jennifer McElroy testified in her deposition taken in August 2001 that she had not yet been able to resume such activities because of her injuries.

This evidence fails to eliminate all material issues of fact so as to shift the burden to plaintiffs with respect to either the significant limitation category or the medically determined injury in connection with the 90/180 days category. Thus, regardless of the insufficiency of plaintiffs' opposing papers, summary judgment should not have been granted (*see Serrano v Canton*, 299 AD2d 703, 705 [2002]). However, since Supreme Court did not address the alternate ground for dismissal in the taxicab defendants' motion for summary judgment, the matter must be remitted to Supreme Court for further consideration.

Mercure, J.P., Spain, Carpinello and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motions to the extent that they sought dismissal on the grounds that plaintiffs did not sustain qualifying serious injuries under the significant limitation of use and 90/180 days categories; said motions denied to that extent and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and as so modified, affirmed.

■ In the Matter of the Claim of AIDA CIPRIAN, Respondent, v BARBIZON HOTEL et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent. [760 NYS2d 261] —Carpinello, J. Appeal from a decision of the Workers' Compensation Board, filed September 12, 2001, which found that claimant has a marked permanent partial disability.

Claimant, a hotel housekeeper, sustained a work-related back injury on May 4, 1996 when a stack of towels and a towel rack fell on her. At issue on appeal is the determination of the Workers' Compensation Board that claimant has a marked permanent partial disability causally related to this injury.

acts of inappropriate sexual contact with an 11-year-old girl. The plea was entered into by defendant with the understanding that the recommended sentence would be concurrent 20-year prison terms. Sentenced accordingly, defendant now appeals.

We are unpersuaded by defendant's claim that County Court erred in denying a motion to suppress his written statement to police on the ground that the police lacked probable cause to arrest him. At the *Huntley* hearing, it was established that the younger of defendant's two victims (*see* n 1, *supra*) gave an oral statement to State Police Investigator Mary DeSantis on the evening of December 2, 2001 detailing acts of sexual contact between herself and defendant during the previous 24-hour period. In addition to interviewing the victim at this time, DeSantis also interviewed her aunt, to whom the sexual activity had been disclosed, and her mother.

Shortly after interviewing the victim, DeSantis discussed the matter with her superior, State Police Senior Investigator Thomas Aiken, who proceeded to the home of defendant's brother to question defendant.[2] While en route, Aiken was advised that defendant had just left the residence and was traveling in a specific direction on a specific roadway. At Aiken's direction, another state trooper followed defendant a short distance and then proceeded to pull him over by activating his emergency lights. Aiken arrived within seconds, informed defendant that he "had some serious things" to talk to him about and inquired if defendant would be willing to accompany him to his "office." Defendant agreed, accompanied Aiken to a nearby State Police barracks and, thereafter, upon waiving *Miranda* rights, gave a detailed, written statement confessing to many instances of sexual contact with the victims.

The trooper who pulled defendant over was justified in doing so even though defendant had not been observed committing any Vehicle and Traffic Law violation, as the accusations leveled against him by the youngest victim most assuredly supplied the police with probable cause to arrest (*see People v Berzups*, 49 NY2d 417, 427 [1980]; *People v Leath*, 273 AD2d 410, 411 [2000], *lv denied* 95 NY2d 891 [2000]; *People v Green*, 154

old at the time of the alleged offense. Witness statements in the record conflict as to her age, and her date of birth is not recited in any document in the record. Even the parties contradict each other on this point in their respective briefs.

2. Aiken knew that defendant was likely to be present at his brother's home because State Trooper Todd McPhail, at Aiken's direction, had located defendant's vehicle there and was surveilling it.

AD2d 548 [1989], *lv denied* 74 NY2d 948 [1989]; *see also People v Robinson*, 97 NY2d 341 [2001]; *People v Bigelow*, 66 NY2d 417, 422 [1985]). That the police may have delayed in obtaining an arrest warrant so as to question defendant in the absence of counsel does not mandate suppression of his statement (*see People v Anderson*, 290 AD2d 658, 658-659 [2002], *lv denied* 97 NY2d 750 [2002]; *People v Wheeler*, 227 AD2d 980 [1996], *lv denied* 88 NY2d 1025 [1996]; *People v Counts*, 214 AD2d 897 [1995], *lvs denied* 86 NY2d 792, 800 [1995]). Finally, the *Huntley* hearing testimony confirms that defendant voluntarily accompanied Aiken to the barracks, that he was not physically restrained at any time and that he knowingly waived his *Miranda* rights and agreed to speak with Aiken in the absence of counsel. In a nonconfrontational setting, defendant readily admitted to the younger victim's allegations of sexual contact and also sua sponte offered up his inappropriate conduct with the older victim. Under these circumstances, we are unpersuaded by the claim that this statement was taken in violation of any constitutional rights (*see People v Johnston*, 273 AD2d 514, 515 [2000], *lv denied* 95 NY2d 935 [2000]; *People v Caviano*, 194 AD2d 429, 430 [1993], *lvs denied* 82 NY2d 892 [1993], 83 NY2d 803 [1994]).

Only one of defendant's remaining contentions merits comment, namely his claim that the sentence is harsh and excessive. Although defendant points to the fact that he has no prior criminal record, he has demonstrated genuine remorse for his actions and he has been deemed a suitable candidate for treatment, we ultimately reject these arguments for two compelling reasons. First, defendant entered into the subject plea fully aware that the recommended sentence was indeed the maximum on each count. Moreover, although defendant makes repeated references to his past "success" at self regulating his pedophiliac tendencies, we note that he engaged in "hundreds" of acts of sexual contact with one of his victims for several years, hardly the conduct of a successful self regulator. We are particularly unimpressed with defendant's reliance on *People v Peters* (277 AD2d 512 [2000]) as support for a reduction of the sentence, a case concerning neither the seriousness of the instant charges nor deplorable conduct toward young victims.

Cardona, P.J., Mercure, Crew III and Rose, JJ., concur. Ordered that the judgment is affirmed.